PEOPLE *v.* BECKER.

CRIMINAL LAW—SENTENCE—RESTITUTION AS CONDITION OF PROBATION. Sentence of 17-year-old boy for violation of order of probation which was entered after accepting his plea of guilty to crime of unlawfully leaving the scene of a personal-injury accident and which included as a condition of probation that he make "restitution" within 1 year of the amount of pedestrian victims' hospital and doctor expenses, with which condition the probationer did not comply, is set aside and vacated and cause remanded for correction of such order of probation (CL 1948, § 771.3).

---

REFERENCES FOR POINTS IN HEADNOTES
15 Am Jur, Criminal Law § 498.

Appeal from Recorder's Court for the City of Detroit, Traffic and Ordinance Division; Murphy (George T.), J. Submitted April 11, 1957. (Docket No. 46, Calendar No. 46,990.) Decided September 4, 1957.

Gerald Becker was sentenced for violation of probation upon his failure to make restitution to injured pedestrians ordered in connection with traffic violation. Reversed, sentence set aside and case remanded for correction of probation order.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Ralph Garber, Samuel Brezner* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for the people.

*U. S. A. Heggblom,* for defendant.

SMITH, J. What we confront in this case is the validity of a portion of an order of probation. The order arose out of a hit-and-run accident. The parties are in disagreement as to what is in the record and what is not, but we will assume that the people will not object if we turn to the information for information.

In it we find that defendant and appellant herein, Gerald Becker, was driving a car in a northerly direction on East Grand boulevard, in the city of Detroit, about 8 o'clock in the evening. The month was November. We learn from the transcript of proceedings that defendant was 17 years of age at the time and was driving his father's car (which was uninsured) without permission. As he was passing another car, which was in the lane next to the curb, he (at that time being between Frederick street and

Theodore street) saw 2 people in his path. The probation report adds:

"He swung out to the left to avoid hitting them and put on his brakes but hit both complainants because 'I couldn't turn and stop fast enough.' He said he was going about 30 miles per hour."

Rather than stopping his car, remaining at the scene, and complying with the statutory requirements, he drove away. The charge made against him was that of unlawfully leaving the scene of a personal-injury accident. Upon arraignment upon the information he pleaded guilty. The plea was accepted and, on May 27th, he was placed on probation for 5 years upon condition that he pay costs of $100, which he did, that he report regularly to the probation officer, and that he comply with certain other conditions, only 1 of which particularly concerns us, *viz.*, "5. That probationer shall make restitution as follows: Make restitution of $1,244.48 in 1 year."

We need not relate the steps following, culminating in defendant's being found guilty of violation of his probation. He was thereupon sentenced to serve 6 months to 1 year (with 6 months recommended) in the Detroit House of Correction. The transcript of proceedings on the date he was found guilty of violation of probation contains the following:

"Before I sentenced this boy, I talked to these people who were injured and they had recovered,— at least recovered pretty well. The boy was 17, and I considered that—actually I was reluctant to send him to jail. I determined from my investigation that the accident was his fault, the result of his negligence. The people who were injured spent $1,244 in doctors' and hospital bills. They, as well as I, recognized that there was little likelihood of being able to collect a judgment against this boy if they got one to compensate them for their damages, so I put him

on probation and ordered him to pay these people the $1,244 within a year. I have been informed by the probation department he hasn't paid anything,— so that is why you are here."

The case is before us on leave granted and there is only 1 question, the validity of paragraph 5, above quoted. Defendant has made no restitution and contends that this portion of the order is without statutory warrant. We turn, then, to the statute.

It is provided in CL 1948, § 771.3 (Stat Ann § 28.1133) with respect to conditions of probation, in part, as follows:

"The court may impose such other lawful conditions of probation, including restitution in whole or in part to the person or persons injured or defrauded, as the circumstances of the case may require or warrant, or as in its judgment may be meet and proper."

The problem of the validity of requiring "restitution" as a condition of probation in a criminal case of this type presents serious constitutional problems. (We say "of this type" because in those cases where the criminal defendant has, for instance, been found guilty of embezzlement from his employer, and is required to restore the embezzled funds as a condition of probation, there is no serious question that the requirement imposed comes within the meaning of the term "restitution" as employed in the statute. But such is not our problem.) The problem before us we examined in the case of *People* v. *Good*, 287 Mich 110. There the defendant was convicted of negligent homicide. Having been convicted, he was placed on probation upon certain conditions, one of which was that he "make restitution in the sum of $385." Upon appeal we upheld the validity of this condition, although the case was returned to the circuit court for reasons involving

other parts of the order. Thus we have held that the statutory sanction of requiring "restitution" as a condition of probation comprehended ordering the defendant in a criminal case to pay to certain third persons (not parties plaintiff or defendant in the criminal action) a sum of money fixed by the court itself. This, it will be noted, was without trial either as to extent of civil liability, or, indeed, as to the existence of civil liability itself. Yet we take it to be clear that an offense against the State resulting in criminal liability does not automatically involve a civil liability to a private citizen involved in some manner in the circumstances out of which the crime arose. As to the amount of damages, also, there is an undetermined question. This is not the case of, for instance, obtaining a sum certain under false pretenses, which sum the court orders restored to the complainant. This involves what are presumably unliquidated damages, arising out of what we normally call an automobile accident. The opinion, in fact, does not indicate how the sum was computed, or for what items of injury, if any, it was to be paid. Yet we squarely held (p 115) that "it was not a deprivation of due process of law to deny defendant a hearing on the question of the amount of 'damages' to be imposed."

We are now asked to extend the principle. We say to "extend" the principle because, although the *Good Case* imposed, as a condition of probation in the criminal case, liability for what we normally call civil damages, yet there was in the *Good Case* the circumstance that injuries to the deceased apparently arose out of the very crime for which the defendant was convicted, namely, felonious homicide. But here the act of which defendant was convicted was not that of striking down but of leaving. The appellee, it is true, tells us it is all a part of the same general set of circumstances, the same series of re-

lated acts. But is that enough, that they are all part of the same general set of circumstances? We are here dealing with the liberty of a citizen. Criminal charges must be specific, and proved beyond a reasonable doubt. Even in a department store, something just as good won't do. Here the criminal has been convicted of one charge, but his freedom from incarceration (*i.e.,* his condition of probation) is related to another act, precedent in time, with respect to which neither criminal charges nor civil complaint has been made. This is to import a dangerous concept into the affairs of the citizen. A host of questions arise. What is the ambit of defendant's liability? How far back, in point of time, will we draw the line of demarcation between the included events and those excluded, exacting compensation with respect to the former, ignoring or forgiving it as to the latter? The appellee does not tell us and we find no guidance in the criminal law. Possibly our re-examination of the theory upon which the condition of probation was imposed in the *Good Case* will indicate the solution to our problem.

The majority in the *Good Case* first denies (p 115) "that damages are 'assessed' by the court when restitution is made a condition of probation." Why? Because, says the majority, "No judgment is rendered for, nor could a writ of execution issue to enforce the collection of the sum specified." (*People v. Good, supra.*) It is true, of course, that no judgment is rendered for the sum specified. But that is exactly why the defendant is complaining. He wants a hearing as to his civil liability, with all his constitutional safeguards, and he demands that a judgment be rendered thereon as a prerequisite to a court's compelling his payment of moneys to another. As for writs of execution, we agree that, clearly, none could issue upon a nonexistent judgment, but the relevance of the circumstance to the

issue before us is not equally clear. The defendant either pays up or he serves time. This is a situation where a judgment creditor's inability to obtain a writ of execution in aid of a money judgment has no real significance. If defendant has the resources he will pay. If he. has not, the writ of execution will not create them.

We say, further, that "A defendant in such instance is merely given the alternative of abiding by the conditions imposed or else suffering the imposition and execution of a sentence which ordinarily follows a verdict of guilty." (*People* v. *Good, supra,* 115.) Such language begs the question. Certainly the defendant is "merely" given an alternative, but the question is whether the alternative is lawful. Would it be lawful to require that the defendant submit to a sterilization operation? We will return to this matter of the alternatives given.

We will start at the beginning. Restitution as 'a condition of probation is sometimes expressly authorized by statute (CL 1948, § 771.3 [Stat Ann § 28.1133] ; 18 USCA, § 3651), sometimes sanctioned by practice pursuant to a broad grant of authority relating to the terms and conditions of probation.* In either event the fundamental question presented is as to the scope of the "restitution" that may be ordered. Mr. Justice WIEST, in his separate opinion in *People* v. *Good, supra,* rejected by the majority, held as follows (pp 118, 119) :

"The condition of the probation order that defendant make restitution in the sum of $385 was in the nature of damages, was without statutory authori-

---

* Vt Stats (1947 Revision), title 45, chapter 424, § 10,014:

"Such court shall pass sentence on the accused, if he is convicted, and may then suspend all or part of such sentence and place the person so convicted and sentenced in the care and custody of the State probation officer upon such conditions and for such time as it may prescribe, or until further. order of court."

zation, beyond the inherent power of the court and void.

"Restitution, in whole or in part, to the person or persons injured or defrauded can be had by restoring something to the proper owner in reparation for injury accomplished by criminal act but does not import power to assess civil damages as a condition of probation in a case of negligent homicide. In what respect does the assessment bear relation to restitution, in whole or in part, to the person killed? None whatever.

"Restitution is the return of something taken, a restoration. Every lawyer knows of the writ of restitution in case of forcible entry and detainer, and the legislature is presumed to have had in mind the meaning of the term employed.

"Restitution is a returning of something taken; the act of returning what has been taken. * * *

"In Crabb's Synonyms, I find the true test to apply to the term 'Restitution' as employed in this statute: "'Restitution and reparation are both employed in the sense of undoing that which has been done to the injury of another; but the former respects only injuries that affect the property, and reparation those which affect a person in various ways. He who is guilty of theft, or fraud, must make restitution by either restoring the stolen article or its full value; he who robs another of his good name, or does any injury to his person, has it not in his power so easily to make reparation.' "*

See, also, *People* v. *Prell,* 299 Ill App 130, 133 (19 NE2d 637), wherein the court held:

"How such payments (to the prosecuting witness of the sum of $500 as supposed damages which she sustained as a result of defendant's wilful and wanton driving) could be regarded as 'restitution' within the meaning of the law we are at a loss to understand."

---

* Crabb's Synonyms—Restoration, Restitution, Reparation, Amends.
—REPORTER.

An eye for an eye and a tooth for a tooth may be primitive reparation but it is not restitution. Modern reparation involves a money transfer and we call it damages. It is not restitution unless there has in truth been a restoration of the thing taken or its value. We succeed only in muddling our thinking when we call black white. It must not be thought that these distinctions between "restitution" on the one hand, and "reparation" or "compensation" on the other, are mere verbalisms, lacking in practical difference. Whatever may be one's conclusion as to some uses of the words, which may be interchangeable, the difference between them, as to the constitutional rights of a defendant in a criminal case such as we here consider is the difference between due process of law and lack thereof. For when we order the criminal to return *that* which a jury found *he* took, we do so after a trial both as to the question of liability (who took the funds?) and the extent thereof (how much was taken?). But when we order a criminal defendant to pay the hospital bill of a third person injured in an automobile accident, we have had no trial upon the issue of his civil liability, nor the extent thereof.

Difficulties abound in this type of case, because of the requirements of due process, both procedural and substantive. To illustrate, let us make 2 concessions of considerable magnitude and see if we are nearer solution. Let us concede that restitution, as employed in the statute, goes beyond a return of what was taken by the criminal defendant, and gets into the realm of compensation for injuries done (normally termed "damages"). Let us concede, further, that the criminal liability and the civil liability are synonymous. May "restitution" now be imposed upon the criminal defendant as a condition of probation?

The precise issue before us in the case at bar received exhaustive consideration by the Vermont court in *State* v. *Barnett*, 110 Vt 221 (3 A2d 521). Here the lower court had placed on probation a defendant (convicted of leaving the scene of an accident) "with the additional condition that the respondent should make restitution of $10 per week for the benefit of E. J. Dunn." With respect to the issue before us the court held, in part, as follows (pp 232, 233):

"We think the inference which is unavoidably to be drawn from the whole record is that the damages which Dunn was claiming and which formed the basis of the condition in question were not those resulting from respondent's failure to stop and render assistance as required by the statute. Therefore it is clear that this condition was not one of restitution in any proper sense of the word. Is it illegal and void as being against public policy as claimed by the respondent?     *     *     *

"The condition in question and the making of it was not wholly of private concern between the State and the respondent. It went beyond this and affects the interests of the people of the State as a whole. For here the right of a court to act in a certain way is in question and not merely the right of an individual. Such a right is one of public interest and was exercised here in a manner injurious to that interest.

"We hold that the said condition is illegal and void as being against public policy."

We find similar rulings in the Federal courts in the construction of a statute similar to that of this jurisdiction. Thus it is provided in 62 Stat 842 (1948), 18 USCA, § 3651, that:

"While on probation and among the conditions thereof, the defendant     *     *     *     may be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had."

With respect to such language the third circuit held (*United States* v. *Stoehr* [CCA], 196 F2d 276, 284 [33 ALR2d 836], certiorari denied, 344 US 826 [73 S Ct 28, 97 L ed 643], involving evasion of income taxes) that:

"This section [18 USCA, § 3651, *supra*] has been interpreted to mean that the court's right to order restitution is limited to actual damages or loss caused by the offense of which defendant is convicted."

See, also, *Karrell* v. *United States* (CCA), 181 F2d 981, 987, certiorari denied, 340 US 891 (71 S Ct 206, 95 L ed 646), wherein the ninth circuit held "that the trial court erred in ordering restitution as to losses sustained by any veteran* other than the one directly concerned in the 6 counts upon which appellant stands convicted."

(These Federal cases are of the greater importance to us because of the lengthy quotation of broad general language from an earlier Federal case [*Burns* v. *United States,* 287 US 216 (53 S Ct 154, 77 L ed 266) ] including no question of restitution but heavily relied upon by us in a later restitution case, *People* v. *Marks,* 340 Mich 495, cited to us by both parties to the case at bar.)

We conclude, from the authorities above cited, that even where imposition of the restitution requirement is held to be proper under the circumstances of the particular case before the court, it can be imposed only as to loss caused by the very offense for which defendant was tried and convicted. As to the other crimes or offenses there has been no fixing of his liability therefor in a constitutional sense.

---

* The trial court had ordered "restitution of a certain amount to each of the 17 veterans named in the indictment and also to an additional veteran not named in the indictment."

But the appellee also urges upon us that the statute gives the trial court, in imposing conditions of probation, a broad discretion, italicizing and emphasizing to us the statutory language, thus:

"The court may impose such other lawful conditions of probation, including restitution in whole or in part to the person or persons injured or defrauded, *as the circumstances of the case may require or warrant, or as in its judgment be meet and proper.*" *People* v. *Good*, 287 Mich 110, 115.

The question posed at this point is whether or not these words have the literal breadth insisted upon by appellee. Are there any limits to the court's judgment as to what may be "meet and proper" in the premises? The deeper question is whether these words, however construed, can abrogate the constitutional guarantees of our people. We reject, instanter, any thought that the defendant, because a convicted criminal, stands before us with any degree of vulnerability, that he is shorn of any of his constitutional rights. These guarantees, in truth, meet their real challenge when sought to be employed by the wicked. The upright and the righteous need them not.

We have, indeed, construed the probation statute with a liberality consonant with its humane objectives, but there are limits past which we have refused to go. Thus in *People* v. *Smith*, 252 Mich 4, the defendants, charged with disturbing the peace, were found guilty. In pronouncing sentence it was stated:

. "The court finds them guilty and puts them on 3 months' probation and, following the recommendation of the probation department, that they move from the neighborhood in which they live."

Our Court held that this condition was "without authority of law." We do not yet deport people

from their homes merely upon the recommendation of the probation department. See, also, *People* v. *Baum,* 251 Mich 187 (70 ALR 98). Nor do we utilize probation for the purpose of punishment. In *People* v. *Teasdale,* 335 Mich 1, 8, we condemned a condition of an order of probation which fixed costs "on the theory of punishment rather than of reimbursement to the public," although in this case, as in *People* v. *Smith, supra,* we have no doubt that, in the sentencing court's judgment, the condition seemed to be "meet and proper." So, indeed, undoubtedly seemed to the California court its condition of probation imposed upon a young man 23 years of age, infected with a social disease and convicted of statutory rape. He was given the choice of either going to San Quentin penitentiary or of submitting "to an operation for sterilization" within 10 days. (*People* v. *Blankenship,* 16 Cal App2d 606 [61 P2d 352].) The condition was upheld on appeal but the report does not tell us of the choice made. Those interested in our enlightened solutions of social problems may wish to compare the laws of King Alfred (known as The Great) who succeeded to the crown of Wessex in the year 871. The laws of this monarch permitted a male to make amends or compensation for certain crimes "with his testicles." (See Alfred's Dooms, § 25, as reported in 1 Ancient Laws and Institutes of England, pp 44, 79).*

The point in all of the above is that although the statute authorizes the court to exercise its judgment with a broad discretion as to conditions of probation, the judgment exercised must be a legal judgment, consonant with our constitutional and statutory safeguards.

---

* In this period a system of compensation, *e.g.,* for damages done, (termed bot or bote) was widely employed. Thus the feud-bote was a "recompense for engaging in a feud or faction, and the contingent damages." Stroud's Judicial Dictionary (3d ed, 1952).

In the case before us the court makes a condition of probation that the defendant pay the hospital and medical expenses of the pedestrians injured in the automobile accident. The liability therefor, as well as the amount thereof, is fixed by the court. How? Is it by a trial in open court, upon pleadings defining the claims and issues, with the taking of testimony under oath, confrontation of witnesses, cross-examination, and assertion of defenses, including that of contributory negligence? Clearly not. It was determined, says the court, "from my investigation." As authority therefor, the appellee leans heavily upon our decision in the case of *People* v. *Good, supra.* (*People* v. *Marks,* 340 Mich 495, is not in point and presents issues which we need not here vex.) This case, however, presents an extension of the doctrine of the *Good Case,* for reasons hereinbefore cited. So it is that the case law grows, by extensions of principle. Yesterday's hesitant decision, carefully circumscribed and guarded, becomes, with undiscriminating repetition, today's rule of law, and tomorrow's sacred doctrine. We will not, this date, follow the precedent of *People* v. *Good, supra.*

The above-described paragraph 5 of the order of probation of January 26, 1955, was without authority of law. The record will be remanded to the trial court for correction of the order of probation and for such further proceedings as may be found expedient and not inconsistent herewith. The sentence is vacated and set aside. Costs to appellant.

Edwards, Voelker, and Black, JJ., concurred with Smith, J.

Dethmers, C. J., and Sharpe, Kelly, and Carr, JJ., concurred in the result.