666 A.2d 301

**COMMONWEALTH of Pennsylvania**

v.

**Richard L. WALKER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1994.

Filed Sept. 29, 1995.

44

46

Thomas R. Ceraso, Greensburg, for appellant.

Bradley K. Hellein, Assistant District Attorney, Kittanning, for Commonwealth, appellee.

Before DEL SOLE, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the judgment of sentence of January 25, 1994, entered in the Court of Common Pleas of Armstrong County. We affirm in part, vacate in part, and remand for resentencing.

Appellant pled guilty to driving "while under the influence of alcohol to a degree which renders the person incapable of safe driving[,]"[1] and driving "while the amount of alcohol by weight in the blood of the person is 0.10% or greater[.]"[2]

1. 75 Pa.C.S.A. § 3731(a)(1).
2. 75 Pa.C.S.A. § 3731(a)(4).

These charges arose from a two-car collision in which two occupants of the other vehicle were severely injured. Following the accident, the investigating officer, Chief Roofner of the Gilpin Township Police Department, noticed a strong odor of alcohol on appellant's breath, and asked appellant to submit to a blood alcohol test. Appellant agreed. The test revealed that appellant had a blood alcohol content of .348%.

■ At the sentencing hearing, appellant argued that he should not be sentenced under the enhanced sentencing guideline applicable when serious bodily injury is involved.[3] In support of his argument, appellant relied upon this court's decision in *Commonwealth v. Gallagher*, 430 Pa.Super. 457, 634 A.2d 1147 (1993), for the proposition that in order to implement the enhanced sentencing guidelines under § 303.5, the court must find that the DUI violation was the cause of the resulting serious bodily injury. We agree with appellant's interpretation of the rule. It is in the application of this rule to the facts of the case before us that we disagree.

■ When reviewing whether the evidence supports application of a sentencing enhancement provision, this court has held that a preponderance of the evidence standard is appropriate and does not violate due process, since the provision that allows for the enhancement is not an element of the crime charged. *Commonwealth v. McKeithan*, 350 Pa.Super. 160, 162–170, 504 A.2d 294, 296–299 (1986). While *McKeithan* addressed a weapons enhancement provision, we see no distinction in the case before the court, since causing serious

---

**3.** 42 Pa.C.S.A. § 9721, 204 Pa.Code 303.5 provides in pertinent part:
**Driving under the influence of alcohol or controlled substance** ...

. . . .

(b) When one or more victims suffered serious bodily injury, the guideline sentence recommendations (in months) for convictions under 75 Pa.C.S. § 3731 ... are as follows:

| Conviction | Standard Range | Aggravated Range | Mitigated Range |
|---|---|---|---|
| 1st | 4–6 | 6–8 | 2–4 |
| 2nd | 7–9 | 9–11 | 5–7 |
| 3rd | 9–11 | 11–12 | 7–9 |
| 4th/sub. | 12 | 12 | 9–12 |

bodily injury is not an element of the crime with which appellant was charged. The trial court was therefore required to find by a preponderance of the evidence that appellant's driving while intoxicated caused the victims' injuries. A review of the evidence before the court and the trial court's findings is, therefore, appropriate.

Appellant maintained throughout the proceedings that the victims' car came into his lane of travel, and that, as it did so, appellant stopped his vehicle. (Notes of testimony, 1/25/94 at 27, Presentence Investigation Report [PIR], 11/17/93 at 4.[4]) The probation officer who prepared the PIR, when asked for his assessment of appellant's version, stated:

> My biggest problem with what Mr. Walker told me was that his blood alcohol level was .348. It's difficult for me to determine if he really knew what was happening that day. . . .

Notes of testimony 1/25/94 at 28. In addition, the report from the Pennsylvania Highway Safety Program, appended to the PIR, indicates that a blood alcohol content [BAC] of .34% results in "an exhibition of major impairment of all physical and mental functions; irresponsible behavior; general feeling of euphoria; difficulty in standing, walking, talking, distorted perception and judgment. If BAC reaches .50% a coma develops and by .60% death can result." Clearly, there was

---

**4.** The Presentence Investigation Report and all of its attachments, including the letters to the court from the victim and the report from the Pennsylvania Highway Safety Commission, were made a part of the record at the request of appellant's attorney. *See* notes of testimony, 1/25/94 at 18–19. Appellant is, therefore, estopped from challenging the admissibility of this evidence. *Commonwealth v. O'Bryant*, 320 Pa.Super. 231, 467 A.2d 14 (1983) (since defendant introduced photo identification by one eyewitness to crime, he could not claim error in its introduction). As appellant could not challenge the PIR, having introduced it into evidence, the PIR is presumed to be valid. *See Commonwealth v. Devers*, 519 Pa. 88, 100–102, 546 A.2d 12, 18 (1988) (where presentence investigation report exists, it is presumed that sentencing court considered all relevant factors and weighed those factors in a meaningful fashion). *See also Commonwealth v. Masip*, 389 Pa.Super. 365, 374, 567 A.2d 331, 336 (1989) ("A presentence report constitutes the record and speaks for itself. It is presumed to be valid and need not be supported by evidence unless and until it is challenged by the defendant.").

evidence before the sentencing court that appellant's driving was impaired to a degree that rendered him incapable of operating his vehicle safely. Indeed, this is the precise language of 75 Pa.C.S.A. § 3731(a)(1), one of the sections of the Code to which appellant pled guilty. Section 3731(a)(1) provides:

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving.

Thus, by pleading guilty to this section, appellant has admitted that he was incapable of safe driving.

In addition, the PIR contains a statement from Officer Roofner, the first police officer to reach the scene of the accident, that "it [was] his opinion that the victim's vehicle did cross the center line in an attempt to avoid a head on collision with the defendant's vehicle which was in the wrong lane." (PIR, 11/17/93 at 2.)

The PIR also includes the results of an interview between the probation officer conducting the presentencing investigation and Linda Colanduoni, the victim who suffered the worst injuries, including injuries to her head. According to the PIR, Ms. Colanduoni told the probation officer that as she and her husband and child came around the bend, "the [appellant's] car was in their lane.... [T]he accident happened so fast that she does not know exactly what happened next however, her husband did try to avoid the collision.... [S]he places the blame for this accident solely on [appellant]." (PIR, 11/17/93 at 2-3.) In addition, in a letter to the court from Ms. Colanduoni, appended to the PIR and made a part of the record, Ms. Colanduoni stated: "On July 15, 1992 my family and I were inolved [sic] in an accident caused by a drunk driver. His name is Richard Walker.... I will never forgive Mr. Walker for what he has done to my entire family.... The entire episode Mr. Walker caused is an outrage.... I feel for what he has caused me alone ... should cause him the fullest punishment the law allows." (PIR addendum, 1/15/93.)

At the sentencing hearing, however, Ms. Colanduoni testified that she told the probation office she had no recollection as to how the accident occurred. (*See* notes of testimony, 1/25/94 at 17–18.) Ms. Colanduoni also indicated at the hearing that her memory of other events was deteriorating as a result of her head injuries. *Id.* It was, of course, within the province of the sentencing court to believe all, part, or none of Ms. Colanduoni's testimony. *Commonwealth v. Hlatky,* 426 Pa.Super. 66, 75–77, 626 A.2d 575, 580 (1993), *alloc. denied,* 537 Pa. 663, 644 A.2d 1200 (1994). It was, therefore, within the court's discretion to give more weight to Ms. Colanduoni's prior recollection of the accident than to her testimony at the sentencing hearing.

Based upon the foregoing evidence before the court, the sentencing judge found as follows:

> I find that you [appellant] were intoxicated that night ... and that your intoxication caused your driving to be faulty, and that your driving was a substantial factor in the causing of this accident. I don't believe that it was the sole factor; that there are other factors. I'm finding that it is a substantial factor.

Notes of testimony, 1/25/94 at 73–74.

The facts in the instant case are thus clearly distinguishable from the facts in *Commonwealth v. Gallagher, supra.* Gallagher pled guilty to Driving Under the Influence.[5] He was then sentenced under the enhanced guidelines found at 204 Pa.Code § 303.5(b) to six to twenty-three months in prison because of the serious bodily injury sustained by a passenger in his car. In vacating the sentence and remanding for resentencing, this court held that, where Gallagher's blood alcohol content was .13 per cent, and where the trial judge stated that he "[could] not make a definite finding as to what causation was as far as this accident was concerned," *Gallagher, supra* at 462, 634 A.2d at 1150, there was not enough

---

5. The opinion does not state whether Gallagher was charged under and pled guilty to both 75 Pa.C.S.A. §§ 3731(a)(1) and (a)(4) as in the instant case, or to only one of them.

52

evidence of record to find that Gallagher's drinking caused the accident.

Having found that the enhanced sentencing guidelines were appropriately applied by the trial court, we next address appellant's contention that he was improperly sentenced within the aggravated range of the enhanced guidelines. In order to challenge a discretionary aspect of his sentence, appellant must have met the requirements of *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), and Pa.R.A.P. Rule 2119(f). Although appellant failed to include a concise statement of the reasons for challenging the discretionary aspects of his sentence prior to addressing the merits of the claims, he did, however, include in his "Statement of Questions Involved" a "Petition for Allowance of Appeal Relating to the Discretionary Aspects of Sentencing." Despite the fact that the Commonwealth failed to object to the lack of a concise statement, this court may still quash the appeal for non-compliance if it determines that its review of appellant's claim is significantly hampered by the lack of a concise statement. *Commonwealth v. Smicklo*, 375 Pa.Super. 448, 454–456, 544 A.2d 1005, 1009 (1988); *Commonwealth v. Murphy*, 405 Pa.Super. 452, 455 n. 5, 592 A.2d 750, 751 n. 5, (1991); *Commonwealth v. Ousley*, 392 Pa.Super. 549, 573 A.2d 599 (1990). It is clear in the case before the court that appellant has raised at least one substantial question by challenging whether the same factors that triggered the enhancement guidelines in the first place can also be used to sentence in the aggravated range. As review on appeal is not substantially impaired, we shall address the merits of appellant's challenge.

Discretionary aspects of sentencing are reviewed on appeal for a manifest abuse of discretion. *See Commonwealth v. White*, 341 Pa.Super. 261, 491 A.2d 252 (1985). It is clear in the instant case that appellant has not demonstrated a manifest abuse of discretion on the part of the trial court. Appellant attempts to rely upon *Commonwealth v. Moore*, 420 Pa.Super. 484, 617 A.2d 8 (1992), which held that the same mitigating factor that determined a defendant's offense gravi-

ty score could not be used in deciding to sentence in the mitigating range. In *Moore,* the sentencing court not only gave defendant credit twice for the same mitigating factor, but also failed to take into account the numerous aggravating factors delineated in the PIR. *Id.* at 490–494, 617 A.2d at 12–13. As the *Moore* court stated:

'In determining whether a particular sentence is "clearly unreasonable" or "unreasonable," the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the pre-sentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the "findings" upon which the trial court based its sentence.'

*Id.* at 491–492, 617 A.2d at 12, *quoting Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 472–474, 491 A.2d 1352, 1354 (1985). In the instant case, the trial court had before it a PIR that recommended a minimum sentence of six (6) months, the point of overlap between the standard and aggravated ranges. The trial court also found that appellant had seriously injured more than one person, and that the injuries to one of the victims were of a permanent and totally debilitating nature. These were two of the three reasons the trial court gave for sentencing in the aggravated range. The third reason was appellant's extraordinarily high blood alcohol content while operating a motor vehicle. (Notes of testimony, 1/25/94 at 74–75.)

In *Commonwealth v. Duffy,* 341 Pa.Super. 217, 491 A.2d 230 (1985), this court addressed the issue of whether a prior record, which was already taken into consideration in the sentencing guidelines by the prior record score, could also be used as a factor in sentencing appellant in the aggravated range. In deciding that the trial court had not abused its discretion, this court stated:

In this case, the sentencing judge did not rely *solely* on appellant's prior record in deciding to sentence him within the aggravated range.

*Id.* at 224, 491 A.2d at 233 (emphasis added). In the instant case, as in *Duffy,* the trial court did not rely solely upon the factors that were necessary to sentence appellant under § 303.5.[6] The trial court articulated three valid reasons for sentencing in the aggravated range. The fact that there were also mitigating circumstances before the sentencing court, indicating that appellant had "mended his ways" since the accident, did not require the sentencing court to weigh those factors more heavily than the aggravating factors. As the sentencing judge stated to appellant during sentencing:

> In [arriving at your sentence], I've considered your age, your background. I've considered all the things brought to my attention by virtue of the presentence investigation report and all its attachments. I've also considered all of the evidence, testimony and otherwise, presented to me today.

Notes of testimony, 1/25/94 at 72–73. It is clear that the sentencing court adequately and fairly considered all of the factors before it in determining appellant's sentence. As a result, we find no abuse of discretion.[7]

Finally, appellant argues that 1) restitution is not proper in a "drunk driving" case; 2) restitution is not proper where there is insufficient evidence that the victim's injuries directly resulted from the crime; and/or 3) the trial court erred in requiring restitution without first determining the actual amount of the victim's loss. (Appellant's brief at 13–14.) We note first, that, while appellant couches his restitution issue as an appeal to the discretionary aspects of his sentence, this court has long held that challenges to the appropriateness of a sentence of restitution are generally challenges to the legality of the sentence. *Commonwealth v. Balisteri,* 329 Pa.Super. 148, 478 A.2d 5 (1984) (the legality of a sentence of restitution is not a waivable issue and therefore, we must address appel-

6. In order to sentence under § 303.5, the trial court only had to find that "one or more victims suffered serious bodily injury."

7. Appellant's reliance on the dissent in *Commonwealth v. Mills,* 344 Pa.Super. 200, 496 A.2d 752 (1985), is, for obvious reasons, misplaced, and overlooks the holding of the majority, which refutes appellant's argument.

lants' contention); *Commonwealth v. Kerr,* 298 Pa.Super. 257, 444 A.2d 758 (1982) (appellant raised a legal question regarding his sentence of restitution where appellant claimed that, because the victim was insured and received compensation from his insurer for the loss sustained, appellant could not properly be directed, as a part of his sentence, to make restitution); *Commonwealth v. Cannon,* 387 Pa.Super. 12, 563 A.2d 918 (1989), *alloc. denied sub nom Commonwealth v. Reap,* 525 Pa. 597, 575 A.2d 564 (1990) (appellants' allegation that it was illegal for the lower court to impose restitution which included the victim's pain and suffering raised a legal issue, and was not an appeal to the discretionary aspects of sentencing).

We note further, however, that, while challenges to the appropriateness of a sentence of restitution are challenges to the legality of the sentence, based upon the proposition that the court lacks jurisdiction to impose the sentence, *Commonwealth v. Hartz,* 367 Pa.Super. 267, 277–279, 532 A.2d 1139, 1144 (1987) (Cirillo, J. concurring); *Commonwealth v. Harner,* 402 Pa.Super. 472, 476 n. 8, 587 A.2d 347, 349 n. 8 (1991), *reversed on other grounds,* 533 Pa. 14, 617 A.2d 702 (1992), nevertheless, challenges alleging that a sentence of restitution is excessive under the circumstances have been held by this court to be challenges to the discretionary aspects of sentencing. *Commonwealth v. Mathis,* 317 Pa.Super. 362, 368–370, 464 A.2d 362, 366 (1983). We will, therefore, first determine which of appellant's restitution issues are challenges to the legality of the sentence.

Appellant first claims that restitution does not apply to violations of the Motor Vehicle Code, and specifically to 75 Pa.C.S.A. §§ 3731(a)(1) *et seq.* Such a claim is clearly a challenge to the legality of the sentence, since appellant is alleging that there is no statutory basis for a sentence of restitution. *Balisteri, supra* at 151–153, 478 A.2d at 7 (where appellant claims there is no statutory basis for a sentence of restitution for emotional or mental disturbance caused by his criminal conduct, appellant has raised a question as to the

legality of the sentence). We must, therefore, address the merits of appellant's first claim.

This court has held on at least one prior occasion that restitution can be ordered in a situation such as the one presently before the court. *Commonwealth v. Fuqua*, 267 Pa.Super. 504, 407 A.2d 24 (1979). In *Fuqua*, this court was confronted with an order of restitution entered after Fuqua lost control of his car and crashed into the victim's house. Fuqua was found guilty of driving under the influence of alcohol [8] following a non-jury trial during which Fuqua denied being intoxicated and testified that he had not crashed into the victim's house. *Id.* at 506–508, 407 A.2d at 25. As a result of Fuqua's conviction, the judge sentenced Fuqua to one year of probation, and ordered him to make restitution to the owner of the house. On appeal from the sentence of restitution, this court analyzed the applicability of 18 Pa.C.S.A. § 1106 *et seq.* to a violation of 75 Pa.C.S.A. § 3731(a)(1). Section 1106 provides in pertinent part:

**(a) General rule.**—Upon conviction for any crime wherein property has been stolen ... or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury *directly resulting* from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

**(b) Condition of probation or parole.**—Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

18 Pa.C.S.A. § 1106(a), (b) (emphasis added). In addressing the applicability of § 1106 to a violation of the Motor Vehicle Code, Judge Spaeth in *Fuqua* relied upon the trial court's analysis:

'... The basis of the defendant's allegation is that driving under the influence of alcohol is not a crime punishable under Title 18. Rather, he argues, the crime is punishable

8.   75 Pa.C.S. § 3731(a)(1).

under ... the Motor Vehicle Code. 75 Pa.C.S.A. 3731 deals with the offense of driving under the influence of alcohol. 3731(d) states:

"Penalty. Any person violating any of the provisions of this section is guilty of a misdemeanor of the third degree."

Immediately following sub-section (d), the Code cross-references as follows:

"Misdemeanor of the third degree defined: See 18 Pa. C.S.A. Sec. 106."

Section 106 simply defines Misdemeanor of the Third Degree. Nowhere in Title 75 is there a definition of a misdemeanor of the third degree or a punishment applicable thereto. Therefore it is clear that Title 75 defines the offense and Title 18 outlines the punishment. Thus, when Section 1106 defines a crime as an offense punishable under Title 18 and therefore, subject to an order for restitution, the Legislature has included driving under the influence of alcohol.'

*Fuqua, supra* at 510 n. 10, 407 A.2d at 27 n. 10, *quoting* lower court opinion at 1–2. We find this logic persuasive.

Appellant in the instant case next argues that for § 1106 to apply, there must be a determination of criminal responsibility for the injuries sustained. (Appellant's brief at 13.) Once again, we find that appellant poses a challenge to the legality of the sentence of restitution. *Commonwealth v. Reed,* 374 Pa.Super. 510, 543 A.2d 587 (1988) (order of restitution requiring a defendant to make restitution for a loss which, according to the record, he did not cause, is illegal). We must, therefore, address appellant's second restitution issue.

We note initially that appellant in *Fuqua* raised the same argument; he argued that, because the trial court had failed to make a finding on the record that the damage to the house was a direct result of appellant's crime of driving under the influence, a sentence of restitution was improper. *Fuqua, supra* at 511–512, 407 A.2d at 28. This court disagreed, however, and held that, where the evidence was clear that the

order of restitution was for the damages to the victim's property, and where the lower court found that appellant did in fact collide with the house and cause the damage, the fact that the lower court failed to make a specific finding that the damage was a direct result of appellant's drunk driving did not warrant vacating the sentence and remanding for resentencing. *Id.* [9]

We find the case before us controlled by our prior holding in *Fuqua.* Although the evidence relied upon by the trial court did not arise during trial because of appellant's guilty plea, nevertheless, in language quoted *supra* at the sentencing hearing, the court found that appellant's driving while under the influence was a substantial factor in causing the injuries to the victims. (Notes of testimony, 1/25/94 at 72–73.) Just as this finding of causation supports the sentencing court's decision to apply the enhanced sentencing guideline, it likewise supports the court's decision to impose restitution.

We find appellant's reliance upon *Commonwealth v. Cooper,* 319 Pa.Super. 351, 466 A.2d 195 (1983), and *Commonwealth v. Harner,* 533 Pa. 14, 617 A.2d 702 (1992), misplaced. In *Cooper,* a motorist struck and killed a young boy riding a bicycle. The motorist pled guilty, however, only to the lesser offense of leaving the scene of an accident. In deciding that restitution was improper, the court stated:

> In other jurisdictions where this problem has arisen, it has been held that restitution is permissible only as to losses flowing from the conduct for which the defendant has been held criminally accountable. . . . In the Michigan case of *People v. Becker,* [349 Mich. 476, 84 N.W.2d 833 (1957) ], . . . the defendant pled guilty to unlawfully leaving the scene of an accident involving personal injury to two pedestrians. As a condition to the probation imposed by the court, it was ordered that defendant make restitution . . . to the injured pedestrians. On appeal the Supreme Court of Michigan

9. The *Fuqua* court found that restitution had been imposed as a direct sentence, as here, and not as a condition of probation; therefore, it did not address the distinction. *Fuqua, supra* at 509 n. 8, 407 A.2d at 26 n. 8.

describing the facts before it related that 'the criminal has been convicted of one charge, but his freedom from incarceration [i.e., the restitution condition attached to his probation] is related to another act, precedent in time, with respect to which neither criminal nor civil complaint has been made.' The court vacated the restitution holding that:

[E]ven where imposition of the restitution requirement is held to be proper under the circumstances ... it can be imposed only as to loss caused by the very offense for which defendant [sic] was tried and convicted. As to other crimes or offenses *there has been no fixing of his liability therefore in a constitutional sense.*

*Id.* at 486, 84 N.W.2d at 838. The holding of the *Becker* court is grounded upon the rationale that a defendant is denied due process of law when the losses for which restitution has been imposed did not arise from the action for which defendant has been held criminally accountable. We share the constitutional concern of the *Becker* court as to the restitution before us, because appellant has not been held criminally accountable for the actions which resulted in the death of the accident victim.

*Cooper, supra* at 356–357, 466 A.2d at 197 (citations omitted) (emphasis in original).

Support for the *Cooper* holding is found in *Harner, supra,* a case in which a wife was ordered to pay restitution to her ex-husband for expenses he incurred tracking down and reclaiming his children, after wife violated a custody order and removed the children from her ex-husband's home. In finding that wife could not be ordered to pay restitution, the *Harner* court stated:

Because this section [§ 1106] imposes restitution as part of a sentence, its penal character must not be overlooked and it would seem to us that restitution can be permitted under 18 Pa.C.S. § 1106 only as to losses for which the defendant has been held criminally accountable. This is in keeping with the well established principle that criminal statutes must be strictly construed....

In fact, the very words of the statute provide that it is applicable only upon conviction for a crime wherein property has been stolen, converted, unlawfully obtained or its value substantially decreased, or where the victim suffers personal injury directly resulting from a crime. No such crime has been committed here by Appellant. Unless the incidental costs Mr. Harner expended to locate his children have been made part of a criminal proceeding for which Appellant was convicted, it seems dubious to us that due process would permit a court to determine that these are losses that can be passed on to Appellant, as a sentence, under a theory that they flowed as a direct result of the crime for which Appellant was convicted.

... [The superior court and the Commonwealth argue for] a· strained reading of an otherwise straightforward statute which is directed at giving the trial court the ability to sentence a defendant for the damage caused by him in the commission of a crime. Thus, where one steals an automobile valued at $15,000 and during a high speed chase is involved in a wreck which damages the auto, reducing its value to $5,000, it would be appropriate, in addition to incarceration, upon conviction for theft, to require the defendant to pay the victim $10,000 for the loss of value to the auto. It is impossible to separate the actions of the theft from the damage done to the car and in this sense the decrease in value to the car is a direct result of the crime.

*Id.* at 19–20, 617 A.2d at 705.

Applying the analyses of the *Cooper* and *Harner* courts to the instant case, we find that it is impossible to separate appellant's driving under the influence from the injuries resulting to the victims. The sentencing court found appellant's criminal conduct, the drunk driving, to be a substantial factor in causing the victims' injuries, as required by *Harner.* As a result, we find no abuse of discretion in the sentencing court's imposition of restitution.

We must next, therefore, address appellant's allegation that the sentencing court erred in imposing restitution

without first determining the actual amount of the victims' loss. (Appellant's brief at 14.) We note first that, under the holding in *Mathis, supra,* challenges to appellant's ability to make restitutionary payments, and to the amount of restitution ordered as speculative, are challenges to the discretionary aspects of appellant's sentence. *Id.* at 372–374, 464 A.2d at 368. Nevertheless, in *Reed, supra,* this court, relying upon *Balisteri, supra,* held that an order of restitution that was not supported by the record was illegal. *Reed, supra* at 514, 543 A.2d at 589 ("In *Commonwealth v. Balisteri, supra,* this Court held that an order of restitution which was not supported by the record was illegal.") Regardless which analysis we use, however, we note again that the Commonwealth failed to object to appellant's failure to comply with the requirements of *Tuladziecki, supra.*

In addition, we find that appellant has at least raised a substantial question, arguing as he does that the sentence of restitution was not supported by the record. *Commonwealth v. McLaughlin,* 393 Pa.Super. 277, 290–293, 574 A.2d 610, 617–18 (1990) (a substantial question arises when appellant can show "actions by the sentencing court inconsistent with the sentencing code or contrary to the fundamental norms underlying the sentencing process ...."), *alloc. denied,* 527 Pa. 616, 590 A.2d 756 (1991), *cert. denied,* 502 U.S. 916, 112 S.Ct. 320, 116 L.Ed.2d 261 (1991). *Accord, Hlatky, supra* at 82, 626 A.2d at 583; *Commonwealth v. Jones,* 418 Pa.Super. 93, 99–100, 613 A.2d 587, 590 (1992), *alloc. denied,* 535 Pa. 615, 629 A.2d 1377 (1993). In the instant case, the statute in question, § 1106, requires that the sentencing court "consider the extent of injury suffered by the victim and such other matters as it deems appropriate." 18 Pa.C.S.A. § 1106(c)(1). Since our review of this issue is not hampered by appellant's failure to file a concise statement of reasons for challenging the discretionary aspects of his sentence, *see supra,* we will address appellant's third argument regarding the sentence of restitution.

Appellant argues, and we agree, that the sentencing court abused its discretion by failing to determine for itself

the extent of the victims' losses. A careful review of the sentencing hearing transcript reveals that the sentencing court improperly relied upon the adult probation officer's findings as to the expenses for which the victims had not been compensated, in contravention of our holding in *Commonwealth v. Kioske*, 337 Pa.Super. 593, 487 A.2d 420 (1985) (trial court may not delegate to the county adult probation department the final determination as to any disputed amounts to be paid by defendant as restitution). In addition, we note the probation officer's admission on the record that he "assumed" the amount labeled, "This balance for physician services has not been paid," was the proper amount of restitution; there was no actual determination by that officer based upon his own review of the documents. (Notes of testimony, 1/25/94 at 30–31.) As a result, we find that the sentencing court failed to comply with the mandate of *Harner, supra*, that the sentencing court determine the amount of loss or damage caused, the amount of restitution appellant can afford to pay, and how it should be paid. *Id.* at 22–23, 617 A.2d at 707. *See also Balisteri, supra* at 155–157, 478 A.2d at 9 (since restitution is part of a criminal sentence, it must be supported by the record and the court must determine the loss or damages resulting from the defendant's conduct; the amount of compensation the defendant can afford to pay; and how such amount should be paid). The trial court must make sure that any award made is not speculative or excessive. *Fuqua, supra*, at 508–510, 407 A.2d at 26. Furthermore, the sentencing court may be required to apportion the victims' damages, having found that appellant was not the sole cause of the victims' injuries. *Balisteri, supra* at 155–158, 478 A.2d at 9–10 (where trial court found that defendant's conduct was a contributing factor in causing the harm, but gathered that other factors might also be involved, this court remanded for trial court to determine if apportionment were appropriate since no determination could be made from the record). Finally, the trial court must determine whether the amounts the victim was compensated by her medical insurance or appellant's automobile insurance were properly excluded from the restitution. *See, for example, Commonwealth v. Kerr*, 298 Pa.Super. 257, 444

A.2d 758 (1982); *Commonwealth v. Cannon,* 387 Pa.Super. 12, 563 A.2d 918 (1989).

As a result of the foregoing, judgment of sentence is affirmed in part and vacated in part, and this case is remanded for resentencing on the issue of restitution. Jurisdiction is relinquished.

BROSKY, J. files a Concurring and Dissenting Opinion.

BROSKY, Judge: concurring and dissenting.

I disagree with the majority's conclusion that the evidence supported application of the sentencing enhancement. For this reason I dissent from that portion of the opinion and order.

The sentencing guidelines at 204 Pa.Code § 303.5 provide sentencing ranges to be applied for a DUI conviction "when one or more of the victims suffers serious bodily injury." However, in *Commonwealth v. Gallagher,* 430 Pa.Super. 457, 634 A.2d 1147 (1993), we indicated that implementation of this sentencing provision was dependent upon a finding that the DUI violation was the cause of the resulting serious bodily injury and vacated a sentence where the evidence was speculative as to the cause. In the present case there is no question that serious bodily injury was sustained, however, the evidence adduced at the sentencing proceedings was quite minimal and did not establish, with any degree of certainty, that appellant's intoxication caused the injuries sustained.

Appellant maintained throughout the proceedings that the victim's car came into his lane of travel and that as it did so he stopped his vehicle within his lane at which time the victims' vehicle struck his. Despite his persistent challenge to the basic factual premise underlying the implementation of an enhanced sentence, the Commonwealth presented no actual testimonial evidence relating to who or what caused the accident in question. Instead, to carry its burden, the Commonwealth apparently relies upon a pre-sentence report, which, essentially, is total hearsay.

64

The pre-sentence investigation contains the opinion of the investigating officer, Chief Roofner, that the appellant crossed into the victim's lane of travel. However, the officer did not witness the collision and there is no indication in the report as to how this opinion was reached, and, of course, he did not appear at the sentencing to explain the basis of his "opinion." The report further contains a version of events of one of the victims, Linda Colanduoni, indicating that as they came around the bend appellant's vehicle was in their lane of travel and that she "places the blame for this accident solely on [appellant]." Unlike Chief Roofner, Ms. Colanduoni did testify at the sentencing hearing. However, she indicated she had *no recollection* of the accident. Thus, the trustworthiness of this version of what transpired is totally negated by her own testimony at sentencing.

Unfazed by the above the majority rehabilitates and supplements the Commonwealth's evidence in an attempt to make it appear to be sufficient. At pages 3 and 4 of their opinion they supply information relating to the extent of appellant's intoxication and the generally associated affects of that level of intoxication. The apparent purpose of this process is to allow the inference that since appellant was so drunk he must have caused the collision and his statements to the contrary cannot be trusted. Appellant's intoxication and interest are certainly proper factors to consider in the weighing of his testimony. However, the sentencing court never made a credibility assessment, and the mere fact that appellant was intoxicated does not mean that he caused the accident in question. Next, the majority attempts to rehabilitate Ms. Colanduoni's testimony by hypothesizing that as a result of the collision she had been gradually losing her memory of the accident so that at the time of sentencing she could not recall the accident at all. Thus, they argue, the version contained in the pre-sentence report should be credited above her sentencing testimony. This hypothesis is flawed, however, because Ms. Colanduoni never testified that she had been gradually losing her recollection. Her exact response at sentencing was "I told him [the probation officer] that I have absolutely no recollection of the

accident. . . . I don't remember anything that whole day, or weeks—there's loads of things I don't remember."

By Ms. Colanduoni's own testimony she had no recollection of the accident *at the time* she spoke with the probation officer. She does not state that she had a recollection at the time of her interview with the probation department but then lost it sometime before the time of the sentencing when she testified. Additionally, no one else testified that Ms. Colanduoni had been suffering a gradual deterioration of memory, nor was that syndrome noted in the pre-sentence investigation despite listing the various medical consequences of the accident. As such, it is far more likely that the victim related to the probation officer her opinion and belief of what transpired, based upon assumption or what someone else told her, rather than what she personally recollected.

As such, although the majority suggests that the Commonwealth carried its burden with respect to applying the sentencing enhancement, in my opinion the evidence is rather minimal and inherently suspect. This is unfortunate because, in all likelihood a much stronger case could have been presented. After all, there were three occupants of the vehicle in question and only one was called to testify. Were they all incapable of remembering what transpired just preceding the accident? Chief Roofner could have been presented as well to explain his "opinion" and how it was derived. Testimony regarding debris location and skid marks would have been especially helpful and, one would assume, must have been available. Yet the Commonwealth put no such evidence in. In consideration of *Gallagher*, and upon the record presented, I do not believe it was proper to sentence according to § 303.5.[1] Thus, I dissent from that aspect of the decision.

1. My dissenting opinion should not be construed as leniency towards drunk drivers. If appellant in fact caused the accident in question I believe he would be fully deserving of the enhanced sentence imposed in this case. However, the Commonwealth should be made to prove the existence of the underlying elements of the enhanced sentence just as they are made to prove the elements of the offense in question and the fact that appellant has chosen to plead guilty to the offense of driving under the influence does not eliminate the Commonwealth's

66

obligation to prove the additional elements necessary to impose the enhanced sentence.