# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v McKINLEY

Docket No. 147391. Argued April 3, 2014 (Calendar No. 4). Decided June 26, 2014.

Matthew C. McKinley was found guilty by a jury in the Calhoun Circuit Court of larceny over $20,000, malicious destruction of property over $20,000, and inducing a minor to commit a felony in connection with a series of thefts of commercial air conditioning units. The trial court, Conrad J. Sindt, J., sentenced the defendant, as a fourth-offense habitual offender, to concurrent terms of 12 to 25 years in prison on each count and reserved a decision regarding restitution. Following a hearing, and over defense counsel's objection to the amount of restitution assessed, the court entered an amended judgment of sentence to reflect the imposition of $158,180.44 in restitution against the defendant. Of that total, the defendant was ordered to pay $63,749.44 to the four victims of the offenses of which he was convicted and $94,431 to the victims of uncharged thefts attributed to the defendant by his accomplice. The Court of Appeals, FORT HOOD, P.J., and FITZGERALD and O'CONNELL, JJ., vacated the defendant's conviction for larceny over $20,000, but otherwise affirmed his convictions and sentences in an unpublished opinion per curiam issued May 16, 2013 (Docket No. 307360). The panel rejected the defendant's argument that Michigan's restitution scheme was unconstitutional because it permitted trial courts to impose restitution on the basis of facts not proved to the trier of fact beyond a reasonable doubt. The Supreme Court granted defendant's application for leave to appeal, limited to the issues whether an order of restitution was equivalent to a criminal penalty and whether Michigan's statutory restitution scheme was unconstitutional insofar as it permitted the trial court to order restitution based on conduct for which a defendant was not charged that had not been submitted to a jury or proven beyond a reasonable doubt. 495 Mich 897 (2013).

In an opinion by Justice MCCORMACK, joined by Chief Justice YOUNG and Justices MARKMAN, KELLY, ZAHRA, and VIVIANO, the Supreme Court *held*:

A trial court's restitution award that is based solely on conduct for which the defendant was not charged may not be sustained. *People v Gahan*, 456 Mich 264 (1997), was overruled to the extent it held that MCL 780.766(2) authorizes the sentencing court to order criminal defendants to pay restitution to all victims, even if those specific losses were not the factual predicate for the conviction.

1. It was not necessary to reach either of defendant's constitutional challenges to the restitution award. Under the rule of constitutional avoidance, it was necessary to revisit the statutory analysis of MCL 780.766(2) set forth in *Gahan* because the statutory analysis in that

case was plainly incomplete, and the defendant's constitutional challenge to restitution based on conduct for which he had not been charged was a novel one that other courts had not addressed. Defendant's challenge to remainder of the restitution award was waived because he did not challenge it in his initial application for leave to appeal in this Court, but instead had posited that that portion passed constitutional muster.

2. The *Gahan* Court's reading of MCL 780.766(2) was not sustainable and was overruled. The plain language of the statute authorizes the assessment of full restitution only for a victim of the defendant's course of conduct that gave rise to the conviction. Given that only crimes for which a defendant was charged could cause or give rise to the conviction, the statute ties the defendant's course of conduct to the offenses for which the defendant was convicted and requires a causal link between them. Therefore, any course of conduct that did not give rise to a conviction could not be relied on as a basis for assessing restitution against a defendant. Similarly, the statute requires that "any victim" be a victim of the defendant's course of conduct giving rise to the conviction, indicating that a victim for whom restitution was assessed need also have a connection to the course of conduct that gave rise to the conviction. Allowing restitution to be assessed for uncharged conduct would read the phrase "that gives rise to the conviction" out of the statute by permitting restitution awards for "any victim of the defendant's course of conduct" without any qualification. This conclusion was reinforced by reading MCL 780.766(2) *in pari materia* with other provisions in the Crime Victim's Rights Act, MCL 780.751 *et seq.*, that also require a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded. Because MCL 780.766(2) did not authorize the assessment of restitution based on uncharged conduct, the trial court erred by ordering defendant to pay $94,431 in restitution to the victims of air conditioner thefts attributed to defendant by his accomplice but not charged by the prosecution.

3. *Gahan* was wrongly decided because it interpreted only one phrase in MCL 780.766(2) and failed to address another. Under the factors for overruling prior decisions set forth in *Robinson v Detroit*, 462 Mich 439 (2000), *Gahan* was overruled to the extent that it held that MCL 780.766(2) authorized the sentencing court to order criminal defendants to pay restitution to all victims, even if those specific losses were not the factual predicate for the conviction.

Judgment of sentence vacated in part; case remanded for entry of an order assessing $63,749.44 against defendant.

Justice CAVANAGH, dissenting, disagreed with the majority's characterization of *Gahan* and would not have overruled it, particularly given that *Gahan*'s interpretation of MCL 780.766(2) was not fully briefed or argued. He explained that when the Crime Victim's Rights Act was enacted, the well-established common-law meaning of the phrase "course of conduct" included uncharged conduct that was related to the illegal scheme from which the defendant's conviction arose, which the Legislature was presumed to have known at the time. He stated that the majority's interpretation read the phrase "course of conduct" out of the statute, effectively rewriting it to limit restitution to only those losses suffered by victims of the defendant's conduct that resulted in a conviction.

©2014 State of Michigan

# Opinion

Chief Justice:      Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED June 26, 2014

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                                                 No. 147391

MATTHEW CHARLES McKINLEY, a/k/a
JEFFREY ALAN NEWBOLD,

        Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

McCORMACK, J.

In this case, we decide whether a trial court's restitution award that is based solely on uncharged conduct[1] may be sustained. We conclude that it cannot. We therefore overrule our decision in *People v Gahan*, 456 Mich 264; 571 NW2d 503 (1997), to the extent that *Gahan* held that MCL 780.766(2) "authorizes the sentencing court to order

---

[1] For purposes of this opinion, the phrase "uncharged conduct" refers to criminal conduct that the defendant allegedly engaged in that was not relied on as a basis for any criminal charge and therefore was not proved beyond a reasonable doubt to a trier of fact.

criminal defendants to pay restitution to all victims, even if those specific losses were not the factual predicate for the conviction." *Gahan*, 456 Mich at 270. Accordingly, we vacate the portion of the judgment of sentence ordering that the defendant pay $158,180.44 in restitution, and remand to the trial court for entry of an order assessing $63,749.44 in restitution against the defendant.

## I. FACTS AND PROCEDURAL HISTORY

In January 2011, Battle Creek police officers arrested the defendant because they believed him to be responsible for a series of thefts of commercial air conditioning units in the area. Following a trial, a jury found the defendant guilty of larceny over $20,000, malicious destruction of property over $20,000, and inducing a minor to commit a felony.[2] The trial court sentenced the defendant, as a fourth-offense habitual offender, to concurrent terms of 12 to 25 years in prison on each count. The trial court reserved a decision on restitution until after sentencing. Following a hearing, and over defense counsel's objection to the amount of restitution assessed, the trial court entered an amended judgment of sentence to reflect the imposition of $158,180.44 in restitution against the defendant. Of that total, the defendant was ordered to pay $63,749.44 to the four victims of the offenses of which he was convicted and $94,431 to the victims of uncharged thefts attributed to the defendant by his accomplice.

The Court of Appeals vacated the defendant's conviction for larceny over $20,000, but otherwise affirmed his convictions and sentences. *People v McKinley*,

---

[2] The defendant employed a teenage accomplice, whom he rewarded with money and cigarettes, to help him remove the air conditioning units. His accomplice testified against the defendant at trial pursuant to a plea agreement.

unpublished opinion per curiam of the Court of Appeals, issued May 16, 2013 (Docket No. 307360). The panel rejected the defendant's argument that Michigan's restitution scheme is unconstitutional because it permits trial courts to impose restitution on the basis of facts not proven to the trier of fact beyond a reasonable doubt. *Id*. at 8.

We granted leave to appeal, 495 Mich 897 (2013), limited to the following issues:

> (1) whether an order of restitution is equivalent to a criminal penalty, and (2) whether Michigan's statutory restitution scheme is unconstitutional insofar as it permits the trial court to order restitution based on uncharged conduct that was not submitted to a jury or proven beyond a reasonable doubt. See *Southern Union Co v United States*, 567 US ___; 132 S Ct 2344; 183 L Ed 2d 318 (2012); *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000); contra *People v Gahan*, 456 Mich 264 (1997).

## II. STANDARD OF REVIEW

The proper application of MCL 780.766(2) and other statutes authorizing the assessment of restitution at sentencing is a matter of statutory interpretation, which we review de novo. *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009). "The first step when interpreting a statute is to examine its plain language, which provides the most reliable evidence of intent." *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014). If the statutory language is unambiguous, no further judicial construction is required or permitted. *Id*. Questions involving the constitutionality of a statute are also reviewed de novo. *Hunter*, 484 Mich at 257.

## III. ANALYSIS

The defendant's challenge to the restitution award is premised on the Sixth Amendment to the United States Constitution, specifically *Apprendi* and its progeny. Defendant challenges both the amount of the restitution award above $63,749.44 (the

3

amount based on uncharged conduct) and the amount between $20,000 and $63,749.44 (the amount based on convicted conduct above and beyond the amount specifically found by a jury). Only the former argument was preserved by a timely objection.[3] Ultimately, we do not reach either of defendant's constitutional challenges to the restitution award. As to the former, pursuant to the widely accepted and venerable rule of constitutional avoidance,[4] we conclude that it is necessary to revisit the statutory analysis of MCL 780.766(2) we set forth in *Gahan*. *Ashwander v Tenn Valley Auth*, 297 US 288, 347; 56 S Ct 466; 80 L Ed 688 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").[5]

---

[3] At the restitution hearing, defense counsel argued that "the current state of the law would require that . . . there would have been have [sic] some proof beyond a reasonable doubt that those other 'complainants' if you will, were also those that were victimized by the Defendant." In other words, counsel argued only that the portion of the restitution award based on the *uncharged* offenses had to be proven beyond a reasonable doubt.

[4] This rule is well established in both United States Supreme Court caselaw and this Court's precedent. See *Ashwander v Tenn Valley Auth*, 297 US 288, 347; 56 S Ct 466; 80 L Ed 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Slack v McDaniel*, 529 US 473, 485; 120 S Ct 1595; 146 L Ed 2d 542 (2000) (quoting Justice Brandeis's concurring opinion in referring to "[t]he *Ashwander* rule"); *Smith v Curran*, 267 Mich 413, 418; 255 NW 276 (1934) (holding that the "constitutionality of an act will not be passed upon where a case may be otherwise decided").

[5] That is, given that we conclude that Michigan's statutory restitution scheme does not permit the trial court to order restitution based on uncharged conduct, it is unnecessary to decide whether such a scheme would be unconstitutional. Contrary to the dissent's characterization, there is nothing at all inappropriate as to the approach we have taken in this case, and it is an approach that is consistent with the well-established rule that the "constitutionality of an act will not be passed upon where a case may be otherwise

We believe that adherence to that rule is particularly appropriate in this case because the statutory analysis in *Gahan* is so plainly incomplete and the defendant's constitutional challenge to restitution based on uncharged conduct is a novel one that other courts have not addressed (indeed, have not even been called upon to address).[6]

decided[.]" *Smith*, 267 Mich at 418. Furthermore, the parties in this case were in no way denied an "opportunity to be heard" regarding this issue, as suggested by the dissent. The parties were free to argue that *Gahan* wrongly held that Michigan's statutory restitution scheme permits the trial court to order restitution based on uncharged conduct, and defense counsel did at least address this point at oral argument, at which he stated:

> I think Justice McCormack's second question is whether there is an alternative way of addressing this and one way would be to limit this Court's previous decision in *People v Gahan*. In *People v Gahan*, this Court construed the statutory language very broadly where a course of conduct could mean anything — it didn't — it wasn't limited to just what the jury found.

In addition, in his brief filed with the Court, defense counsel specifically asked us to "overrule *Gahan*." Finally, the prosecutor also recognized that "[t]his Court, in its order granting leave, pointed the parties at [*Gahan*] as a potential source of useful precedent." Therefore, it is clear that the parties themselves recognized that they were accorded an opportunity to be heard regarding our decision in *Gahan*.

Finally, we note that despite the dissent's criticism of our decision not to reach the constitutional question and its defense of *Gahan*'s statutory analysis, the dissent does not reach the constitutional question either. And if that constitutional hurdle proves unresolvable to the dissent, one wonders whether that opinion should be a concurrence instead.

[6] Notably, and we believe further supporting our decision not to reach the constitutional issue, the apparent reason other courts have not been asked to address the argument that the defendant raises here is because those courts have (seemingly uniformly) construed their restitution statutes as allowing the assessment of restitution based only on convicted conduct. See, e.g., *Hughey v United States*, 495 US 411, 413; 110 S Ct 1979; 109 L Ed 2d 408 (1990); *State v Clapper*, 273 Neb 750, 758; 732 NW2d 657 (2007); *Commonwealth v McIntyre*, 436 Mass 829, 835 n 3; 767 NE2d 578 (2002) (collecting cases applying various standards requiring a causal relationship between the restitution

As to the defendant's challenge to the restitution award based on convicted conduct, we conclude that the issue is not properly before us because the defendant has waived it.[7] The defendant did not raise any question regarding the portion of the restitution award based on convicted conduct in his initial application for leave to appeal in this Court, but instead posited that the entirety of the restitution award based on convicted conduct passed constitutional muster. Only after we granted leave to appeal did the defendant assert that only $20,000 of the restitution award was constitutional under *Apprendi*. A waiver "extinguishe[s] any error," *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000), thereby foreclosing appellate review, *id*. at 215.

## A. STATUTORY INTERPRETATION

MCL 780.766(2) provides in part that "the [sentencing] court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate."

---

award and the conviction). Accordingly, we are aware of no court that has reached the argument defendant preserved below: whether *Apprendi* and its progeny bar the assessment of restitution based on uncharged conduct. See also *United States v Sharma*, 703 F3d 318, 323 (CA 5, 2012) ("The [Mandatory Victim Restitution Act, 18 USC 3663A] limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction. An award of restitution cannot compensate a victim for losses caused by conduct not charged in the indictment or specified in a guilty plea, or for losses caused by conduct that falls outside the temporal scope of the acts of conviction.").

[7] Waiver is defined as "the 'intentional relinquishment or abandonment of a known right.'" *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), quoting *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999) (citation and quotation marks omitted.

In *Gahan*, we discussed the Legislature's use of the term "course of conduct" and determined that term should be given a broad construction in light of its historical background and prior decisions from the Court of Appeals interpreting a similar statute.[8] *Gahan*, 456 Mich at 271-272. Notably, however, the *Gahan* Court devoted no attention to the modifying phrase "that gives rise to the conviction . . . ."[9]

---

[8] Those prior decisions interpreted MCL 771.3(2), now MCL 771.3(1)(e), which contains identical language to MCL 780.766(2) for all purposes relevant to our analysis. Similarly, other statutes allowing for the assessment of restitution also have identical language for all relevant purposes. See, e.g., MCL 769.1a(2); MCL 780.826(2).

[9] The dissent provides an impassioned defense of *Gahan* and disagrees that the *Gahan* Court ignored this language, but in fact other than quoting this statutory language as part of its background discussion, the *Gahan* Court did not discuss it or attempt to interpret it or give independent meaning to it; it limited its statement of the question before it as "whether 'course of conduct' should be given a broad or narrow construction." *Gahan*, 456 Mich at 271. But "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute." *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

The dissent's view that the Legislature intended to adopt the unique, common-law meaning of "course of conduct" from *People v Gallagher*, 55 Mich App 613; 223 NW2d 92 (1974) is unpersuasive. First, as the dissent acknowledges, that rule was not universally followed. See *People v Blaney*, 139 Mich App 694; 363 NW2d 13 (1984). Second, even in cases purporting to follow *Gallagher*, its scope was open to interpretation. See *People v Seda-Ruiz*, 87 Mich App 100, 105; 273 NW2d 602 (1978) (MAHER, J., concurring) ("I write separately to state my concern that the record does not reveal that all the bad checks allegedly issued by defendant were made part of the plea agreement. *Unless defendant agreed to make restitution for all the checks and the prosecutor agreed not to institute charges on the basis of those checks, defendant may not be required to make restitution for all the checks, but only those listed in the information to which he pled guilty and the information which was nolle prossed as part of the plea agreement.* In such a case, of course, the prosecutor would be entitled to bring charges on the basis of the checks which are not part of the plea agreement.") (emphasis added). We conclude that interpreting the statutory language according to its plain meaning is preferable to concluding that the Legislature selected such language to adopt a standard that was not consistently followed or fully settled.

7

We conclude that the *Gahan* Court's reading of MCL 780.766(2) is not sustainable and must be overruled. The plain language of the statute authorizes the assessment of full restitution only for "any victim of the defendant's course of conduct *that gives rise to the conviction . . . .*" The statute does not define "gives rise to," but a lay dictionary defines the term as "to produce or cause." *Random House Webster's College Dictionary* (2000), p 1139. Only crimes for which a defendant is charged "cause" or "give rise to" the conviction. Thus, the statute ties "the defendant's course of conduct" to the convicted offenses and requires a causal link between them. It follows directly from this premise that any course of conduct that does not give rise to a conviction may not be relied on as a basis for assessing restitution against a defendant. Stated differently, while conduct for which a defendant is criminally charged and convicted is necessarily part of the "course of conduct that gives rise to the conviction," the opposite is also true; conduct for which a defendant is *not* criminally charged and convicted is necessarily *not* part of a course of conduct that gives rise to the conviction. Similarly, the statute requires that "any victim" be a victim "of" the defendant's course of conduct giving rise to the conviction, indicating that a victim for whom restitution is assessed need also have a connection to the course of conduct that gives rise to the conviction. Allowing restitution to be assessed for uncharged conduct reads the phrase "that gives rise to the conviction" out of the statute by permitting restitution awards for "any victim of the defendant's course of conduct" without any qualification.[10] The statute, however, provides an explicit qualification that the *Gahan* Court did not address.

---

[10] Our reading does not read the phrase "course of conduct" out of the statute, as the dissent asserts. Depending on the nature and circumstances of the offense, a single act of

8

Our conclusion is further reinforced when the language of MCL 780.766(2) is read *in pari materia* with other provisions in the Crime Victim's Rights Act, MCL 780.751 *et seq.*[11] MCL 780.767, for example, sets forth the factors for consideration and the burden of proof in setting the amount of restitution. MCL 780.767(1) provides that "[i]n determining the amount of restitution to order under [MCL 780.766], the court shall consider the amount of the loss sustained by any victim *as a result of the offense*." (Emphasis added). Similarly, MCL 780.767(4) provides that "[t]he burden of demonstrating the amount of the loss sustained by a victim *as a result of the offense* shall be on the prosecuting attorney." (Emphasis added). "[T]he offense" in MCL 780.767 can only refer to the offense of which the defendant was convicted, because it is that "offense" that makes him subject to being ordered to pay restitution in the first place. Thus, these provisions further reinforce our conclusion that MCL 780.766(2) requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded. See, e.g., *Paroline v United States*, 572 US ___,

---

"conduct" may be sufficient to give rise to the offense, or a series of acts—i.e., a "course of conduct"—may be necessary. For example, a defendant may be assessed restitution for a conviction for assault with a deadly weapon for firing a gun at a victim and be required to pay the victim's resulting medical bills, or a defendant may be assessed restitution for a conviction for armed robbery for firing a gun at a victim and taking the victim's money and be required to pay the victim's medical bills and repay the money taken from the victim. The latter example involves a "course of conduct" that gives rise to a conviction, and both the defendant's assault and his theft could result in a restitution award under our decision today.

[11] "[S]tatutes *in pari materia* are to be taken together in ascertaining the intention of the legislature, and . . . courts will regard all statutes upon the same general subject matter as part of 1 system." *Dearborn Twp Clerk v Jones*, 335 Mich 658, 662; 57 NW2d 40 (1953).

___; 134 S Ct 1710, 1720; 188 L Ed 2d 714 (2014) ("The words 'as a result of' plainly suggest causation.").

Because MCL 780.766(2) does not authorize the assessment of restitution based on uncharged conduct, the trial court erred by ordering the defendant to pay $94,431 in restitution to the victims of air conditioner thefts attributed to the defendant by his accomplice but not charged by the prosecution. We therefore vacate that portion of the defendant's judgment of sentence. As this holding makes it unnecessary to address the question whether restitution based on uncharged conduct is unconstitutional under the Sixth Amendment and *Apprendi* and its progeny, we decline to reach that question.

## B.  STARE DECISIS

Contrary to the dissent's assertion, we do not "lightly cast aside" our decision in *Gahan*. Rather, in determining whether to overrule our decision in *Gahan*, we are mindful of the factors for overruling our prior decisions set forth in *Robinson v Detroit*, 462 Mich 439, 463-468; 613 NW2d 307 (2000). Stare decisis is "generally 'the preferred course' " because it " 'contributes to the actual and perceived integrity of the judicial process.' " *Id*. at 463, quoting *Hohn v United States*, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). We consider whether *Gahan* was wrongly decided, whether it defies practical workability, whether reliance interests would work an undue hardship, and whether changes in the law or the facts no longer justify the questioned decision. *Id*. at 464.

We have little difficulty concluding that *Gahan* was wrongly decided. For reasons previously explained, we believe that the *Gahan* Court's analysis of MCL 780.766(2) is

10

incomplete because it failed to consider the clause "that gives rise to the conviction." That significant qualification to the phrase "course of conduct" renders untenable the *Gahan* Court's conclusion that the term "course of conduct" should be given a reading so broad that it includes uncharged conduct. This factor weighs in favor of overruling *Gahan*.

We see no basis for concluding that *Gahan* defies practical workability. Trial courts hold hearings and make restitution determinations every day under the *Gahan* Court's reading of the statute, and we see nothing to indicate that *Gahan* is difficult to apply. This factor weighs in favor of retaining *Gahan*.

Regarding reliance, we inquire "whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Robinson*, 462 Mich at 466. We conclude that the reliance interests of crime victims are not implicated here because "to have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event." *Id*. at 467. Under MCL 780.766(2), the "triggering event" is the defendant's commission of a crime against a victim for which the defendant is not charged; before that act occurs, a person would have no reason to believe he or she would be victimized and adjust his or her conduct accordingly, so by definition there can be no reliance on the *Gahan* rule that he or she may recover restitution for his or her losses as a result of that crime.

Further, when dealing with an issue of statutory interpretation, we have said that "it is to the words of the statute itself that a citizen first looks for guidance in directing his

11

actions." *Id*. Accordingly, when a court misconstrues or misreads a statute, "it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction." *Id*. Because *Gahan* interpreted only one phrase in MCL 780.766(2), and in doing so did not address another phrase in the statute, we conclude that reliance on its holding is not justified. Because overruling *Gahan* will not result in practical, real-world dislocations, this factor weighs in favor of its overruling.

Finally, we are aware of no intervening changes in the law or the facts involving restitution awards that would either support or undermine our *statutory interpretation* analysis in *Gahan*.[12] Thus, this factor neither supports nor weighs against overruling *Gahan*.

In sum, we conclude that *Gahan* was wrongly decided and that no reliance interests are upset by its overruling. Stare decisis is a " 'principle of policy' rather than 'an inexorable command,' " and we are not constrained to follow precedent that is badly reasoned. *Id*. at 464, quoting *Hohn*, 524 US at 251. Accordingly, we conclude that *Gahan* should be overruled to the extent that it held that MCL 780.766(2) "authorizes the sentencing court to order criminal defendants to pay restitution to all victims, even if those specific losses were not the factual predicate for the conviction." *Gahan*, 456 Mich at 270.

---

[12] Because we do not reach the defendant's constitutional challenge to the restitution award based on *Apprendi* and its progeny, we do not consider the impact of those cases in our analysis of this factor.

## IV.  CONCLUSION

We hold that MCL 780.766(2) does not authorize trial courts to impose restitution based solely on uncharged conduct.  We overrule our decision in *Gahan* to the extent that it held to the contrary.  Therefore, we vacate the portion of the judgment of sentence imposing $158,180.44 in restitution and remand to the trial court for entry of an order assessing $63,749.44 in restitution against the defendant.

Bridget M. McCormack
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
David F. Viviano

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 147391

MATTHEW CHARLES McKINLEY, a/k/a
JEFFREY ALAN NEWBOLD,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

This Court granted leave to appeal, in part, to address whether "Michigan's statutory restitution scheme is unconstitutional insofar as it permits the trial court to order restitution based on uncharged conduct that was not submitted to a jury or proven beyond a reasonable doubt." *People v McKinley*, 495 Mich 897 (2013), citing *People v Gahan*, 456 Mich 264; 571 NW2d 503 (1997). As our grant order illustrates, questions regarding the constitutionality of Michigan's restitution scheme have arisen since the Legislature's enactment of MCL 780.766(2) and after *Gahan* was decided. The majority, however, ultimately declines to address the limited issue on which this Court granted leave to appeal, instead finding dispositive an issue neither raised nor briefed by the parties—whether *Gahan* correctly interpreted MCL 780.766(2). I disagree with the majority's characterization of *Gahan* as "badly reasoned," but I also object to the majority's decision to lightly cast aside a unanimous opinion of this Court in disregard of a fundamental premise of our adversarial system of adjudication in which each party is

given a full and fair opportunity to be heard.  See *NASA v Nelson*, 562 US ___; 131 S Ct 746, 756 n 10; 178 L Ed 2d 667 (2011).  Because I believe that *Gahan* was correctly decided, I must respectfully dissent.

## I.  BACKGROUND: *PEOPLE v GAHAN*

The majority opinion gives little attention and weight to *Gahan*'s actual analysis.  Accordingly, a brief overview of *Gahan* is necessary.

In *Gahan*, a defendant sold motor vehicles on consignment at his used car lot, repeatedly telling his customers that their cars sold for less than the true amount of the sale and keeping the difference for himself.  The defendant perpetrated this scheme on numerous individuals, ultimately leading to the defendant's conviction of one count of embezzlement regarding a victim who was swindled out of $1,100.  *Gahan*, 456 Mich at 265-267.[1]  After the defendant was convicted, a probation officer prepared a presentence investigation report quoting an investigator as saying that the prosecution " 'originally had 48 counts against the defendant involving transactions . . . that went on for over a year.' "  *Id*. at 268.  In order to compensate all known victims, the probation officer recommended that the defendant be ordered to pay restitution in an amount of more than $28,000, which the trial court subsequently adjusted to $25,000 in its order of restitution.  *Id*. at 268-269.

The Court of Appeals vacated the order of restitution in a split decision, with the majority concluding that, under the plurality opinion of *People v Becker*, 349 Mich 476,

---

[1] The defendant also pleaded guilty to one count of embezzlement involving another victim in a separate proceeding.  *Gahan*, 456 Mich at 267 n 3.

486; 84 NW2d 833 (1957), "a defendant can be ordered to pay restitution only to the victim(s) of the crime(s) for which he is convicted." *People v Gahan*, unpublished opinion per curiam of the Court of Appeals, issued January 16, 1996 (Docket No. 172159), p 5. The Court of Appeals majority reasoned that, although there were similarities between the defendant's crime and the other acts, the defendant was neither tried for nor convicted of the other acts and, thus, the other acts were related to transactions that were independent from the single transaction that provided the factual basis for the conviction. Stated another way, the majority of the panel held that the other acts were not part of the "course of conduct that gave rise to *this* conviction." *Id*. The Court of Appeals dissent disagreed, explaining that MCL 780.766(2), part of the Crime Victim's Rights Act, requires that a court order " 'that the defendant . . . make restitution to *any* victim of the defendant's *course of conduct* that gives rise to a conviction,' " with a "victim" defined by MCL 780.766(1) as " 'an individual who suffers direct . . . financial . . . harm as a result of the commission of a crime.' " *Gahan*, unpub op at 1 (SMOLENSKI, J., concurring in part and dissenting in part). On this basis, the Court of Appeals dissent explained that the victims of uncharged conduct were "also victims of the commission of a crime, i.e., defendant's other acts of commercial fraud," and "[t]hese persons were also victims of defendant's course of conduct, i.e., his commercial fraud, that gave rise to a conviction, i.e., his conviction in this case." *Id*.

In *Gahan*, we granted leave to appeal to consider whether MCL 780.766(2) permits a sentencing court to "order a defendant to pay restitution to compensate all the victims who were defrauded by [the defendant's] criminal course of conduct, even though the specific criminal acts committed against some . . . victims were not the

3

[factual predicate for] the defendant's conviction." *Gahan*, 456 Mich at 265. See, also, *id*. at 269-270. After full briefing and oral argument, this Court unanimously concluded that it does. *Id*. at 270.

In reaching our conclusion, we stated that the statute applicable at the time was clear that "restitution may be ordered with respect to '*any*' victim" as defined by the act. *Id*. at 271 (emphasis added).[2] Considering the phrase "course of conduct," this Court explained that the phrase had acquired a unique meaning at common law before the enactment of the Crime Victim's Rights Act, MCL 780.751 *et seq*. Specifically, we explained that the phrase "course of conduct" originated in cases involving the proper scope of restitution ordered under MCL 771.3 as a condition of probation. Under that statute, which provided that a court may require a probationer to "[p]ay restitution to the victim," defendants generally had argued that restitution was limited to those "losses attributable to the specific charges that resulted in the defendant's conviction." *Gahan*, 456 Mich at 271. We noted, however, that panels of the Court of Appeals had repeatedly rejected this argument. Specifically, the Court of Appeals had held that restitution orders

---

[2] After the defendant's conviction in *Gahan*, the Legislature amended the Crime Victim's Rights Act to "require, rather than permit, that restitution be ordered." *Gahan*, 456 Mich at 270 n 6. Specifically, MCL 780.766 now provides, in relevant part:

> (1) As used in this section only, "victim" means an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime. . . .

> (2) . . . [W]hen sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction . . . .

requiring a defendant to pay a restitution amount exceeding the losses attributable to the specific charges resulting in the conviction were appropriate because "principles of justice required that the defendant 'pay back the entire amount obtained by his course of criminal conduct.' " *Id*. at 272, quoting *People v Seda-Ruiz*, 87 Mich App 100, 103; 273 NW2d 602 (1978). Because the phrase "course of conduct" had developed a unique meaning at common law, this Court held that the common-law meaning of the phrase should be carried over into the Crime Victim's Rights Act, absent an indication of a contrary legislative intent. *Gahan*, 456 Mich at 272. Finding no such indication, this Court held that the Legislature did not intend to deviate from prior caselaw holding that a defendant should be required to compensate for all losses attributable to his illegal scheme "culminat[ing] in his conviction," even if some of the losses did not form the factual basis of the charge resulting in conviction. *Id*.[3] *Gahan* explained that "totally dissimilar crimes committed at different times may not satisfy the statutory 'course of conduct' requirement," but such facts were not presented in *Gahan*. Thus, the Court declined to define the exact parameters of that phrase, noting that the defendant's repeated scheme of defrauding his customers in the same or similar manner clearly fell within the confines of that phrase as developed in previous caselaw. *Id*. at 273 n 11.

---

[3] This Court also compared the broader statutory language from MCL 780.766(2) with federal caselaw interpreting a federal restitution statute. *Gahan*, 456 Mich at 271 n 8. Specifically, unlike its federal counterpart, MCL 780.766(2) does not limit restitution to the offense of conviction by providing that, "when sentencing a defendant *convicted of an offense*," a court "may order . . . that the defendant make restitution to any victim *of such offense*[.]" 18 USC 3663(a)(1)(A) (emphasis added). See, also, *Gahan*, 456 Mich at 271 n 8.

5

Accordingly, *Gahan* reversed the Court of Appeals and reinstated the order of restitution. *Id*. at 277-278.

## II. ANALYSIS

At issue is whether the majority is correct that *Gahan* is an "untenable," "badly reasoned," and "plainly incomplete" opinion that "ignored" the language of the statute. Despite the majority's bold characterizations of *Gahan*'s analysis, I continue to believe that *Gahan* correctly interpreted the plain language of the statute at issue.

As the above background illustrates, this Court was not presented with a novel issue in *Gahan*. Dating back to the late 1960s, panels of the Court of Appeals have been asked to address the proper scope of restitution orders in light of arguments from defendants, like the defendant in *Gahan*, that this Court's plurality opinion in *Becker* and the applicable statutory language limited restitution orders to only those losses attributable to the specific charges or transaction that resulted in a conviction. See, e.g., *People v Nawrocki*, 8 Mich App 225, 227; 154 NW2d 45 (1967) (upholding an order of probation that required a defendant to pay restitution for forged checks in addition to the forged check for which he was convicted of uttering and publishing).

Notably, in *People v Gallagher*, 55 Mich App 613; 223 NW2d 92 (1974), the Court of Appeals addressed whether MCL 771.3 authorized restitution " 'only as to loss caused by the very offense for which [the] defendant was tried and convicted,' " as argued by the defendant. *Gallagher*, 55 Mich App at 617-618, quoting *Becker*, 349 Mich at 486. At the time, MCL 771.3 provided that, as a condition of probation, a court could order restitution " 'in whole or in part to the person or persons injured or defrauded, as

6

the circumstances of the case may require or warrant, or as in its judgment may be meet and proper.' " *Gallagher*, 55 Mich App at 618, quoting MCL 771.3. Agreeing with *Nawrocki* that the statutory language authorized restitution for losses exceeding those that formed the factual basis for the conviction, *Gallagher* rejected the defendant's reliance on *Becker*, which, after a review of federal authority, concluded that restitution ordered under MCL 771.3 could only be imposed for offenses for which the defendant was convicted. *Becker*, 349 Mich at 485-486. See, also, *Gallagher*, 55 Mich App at 618. *Gallagher* explained that not only was *Becker* nonbinding but, in enacting MCL 771.3, the Michigan Legislature did not choose to follow the narrower federal approach, *Gallagher*, 55 Mich App at 618, which limited restitution to " 'aggrieved parties for actual damages or loss caused by the offense [for] which conviction was had,' " *United States v Hoffman*, 415 F2d 14, 21 (CA 7, 1969), quoting 18 USC 3651. Rather, *Gallagher* held that Michigan's broadly worded restitution statute was similar to those of other states insofar as the Michigan statute "permit[ted] restitution of the whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct." *Gallagher*, 55 Mich App at 618, citing *People v Dawes*, 132 Ill App 2d 435; 270 NE2d 214 (1971) (upholding a restitution order as to the single complainant, but also as to other victims of the defendant's conduct that were subsequently discovered).

Later panels of the Court of Appeals applied *Gallagher*'s interpretation of MCL 771.3, holding that the statute permitted restitution to all victims of a defendant's course of conduct, even if the victim's specific losses did not form the factual basis of the defendant's conviction. See *Seda-Ruiz*, 87 Mich App at 102-103 (rejecting a challenge to a restitution order on the ground that it was unlawful for the defendant to be required to

7

pay back amounts for other losses not mentioned in the specific charges for which the defendant was convicted;)[4] *People v Pettit*, 88 Mich App 203, 205-206; 276 NW2d 878 (1979) (quoting and agreeing with *Gallagher* that restitution may be imposed under MCL 771.3 for the " 'whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct' "); *People v Alvarado*, 142 Mich App 151, 162; 369 NW2d 462 (1984), disapproved on other grounds *People v Music*, 428 Mich 356; 408 NW2d 795 (1987) (same). Although some panels of the Court of Appeals applied the *Becker* plurality to limit restitution to only those losses caused by the very offense for which the defendant was tried and convicted, see, e.g., *People v Blaney*, 139 Mich App 694; 363 NW2d 13 (1984), at the time the Crime Victim's Rights Act was enacted, the weight of authority allowed restitution ordered as a condition of probation for losses

---

[4] In *Seda-Ruiz*, the Court of Appeals remanded to the trial court for an evidentiary hearing to address the defendant's argument that he was not given the opportunity to examine all of the checks that were the subject of the restitution order and that some of the checks for which he was required to pay restitution were "not his checks." *Seda-Ruiz*, 87 Mich App at 104. The majority states that the concurring opinion in *Seda-Ruiz*, which agreed with the decision to remand but would have additionally limited restitution to only those checks for which the defendant had pleaded guilty or which were part of the plea agreement, *id*. at 105, suggests that *Gallagher*'s interpretation of the proper scope of restitution was in dispute. Although some jurists, such as the concurring author in *Seda-Ruiz*, may have disagreed with *Gallagher*'s nonbinding interpretation of the proper scope of restitution under MCL 771.3, see MCR 7.215(J)(1), it does not follow that the meaning of the phrase "course of conduct" as used by *Gallagher* to describe the scope of restitution under MCL 771.3 was unsettled at the time of the Crime Victim's Rights Act's enactment, especially in light of *Gallagher*'s clear rejection of the proposition that MCL 771.3 limited restitution to only those losses caused by the offense for which the defendant was convicted.

8

exceeding the losses attributable to the specific charges that resulted in a defendant's conviction.[5]

With this expanded historical backdrop in mind, I continue to believe that *Gahan* correctly determined that the phrase "course of conduct" in the Crime Victim's Rights Act should be given a broad construction consistent with its unique meaning at common law. As this Court has repeatedly stated, "[i]t is a well-established principle of statutory construction that the Legislature is presumed to act with knowledge of statutory interpretations by the Court of Appeals and this Court." *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991). Thus, the Legislature is "deemed to act with an understanding of common law in existence *before* . . . legislation . . . [is] enacted." *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997) (emphasis added). "This Court will [also] presume that the Legislature . . . is familiar with the principles of statutory construction," *People v Hall*, 391 Mich 175, 190; 215 NW2d 166 (1974), particularly the notion that words and phrases that have acquired a unique meaning in the common law are interpreted as having the same meaning when they appear in later enacted statutes dealing with the same subject matter "unless a

---

[5] In fact, after the Crime Victim's Rights Act was enacted, panels of the Court of Appeals continued to apply *Gallagher*'s interpretation to MCL 769.1a, Michigan's similarly worded general restitution statute, as well as MCL 780.766(2), noting that the language adopted by the Legislature was essentially identical to that employed by prior Court of Appeals opinions interpreting MCL 771.3. See, e.g., *People v Littlejohn*, 157 Mich App 729; 403 NW2d 215 (1987); *People v Bixman*, 173 Mich App 243; 433 NW2d 417 (1988); *People v Greenberg*, 176 Mich App 296; 439 NW2d 336 (1989); *People v Persails*, 192 Mich App 380; 481 NW2d 747 (1991); *People v Letts*, 207 Mich App 479; 525 NW2d 171 (1994).

9

contrary intent is plainly shown," *People v Covelesky*, 217 Mich 90, 100; 185 NW 770 (1921). See, also, *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994); MCL 8.3a. In other words, in keeping with the canons of statutory interpretation, the Legislature is presumed to have known the meaning of "course of conduct" as it relates to restitution when it enacted the Crime Victim's Rights Act.

It bears emphasizing that, despite conflicting opinions of the Court of Appeals regarding the applicability of the *Becker* plurality and the proper scope of restitution ordered as a condition of probation, the Legislature nevertheless incorporated a restitution provision into the Crime Victim's Rights Act substantially mirroring the language of *Gallagher* and its progeny.[6] In light of the well-established use of the phrase "course of

---

[6] Compare *Gahan*, 456 Mich at 270 (emphasis added) (noting that MCL 780.766(2) provided that a trial court may order that the defendant make restitution to "any victim of the defendant's *course of conduct which gives rise to the conviction . . . .*"), with *Gallagher*, 55 Mich App at 618 (emphasis added) (interpreting MCL 771.3 as permitting restitution for "the whole loss caused by a *course of criminal conduct upon conviction of a crime arising out of that conduct*"). Notably, MCL 771.3 was subsequently amended to include a phrase nearly identical to the phrase at issue in this case, illustrating the Legislature's intent to codify *Gallagher*'s, rather than *Becker*'s, interpretation of the proper scope of a restitution order under MCL 771.3. See 1993 PA 343; MCL 771.3(1)(e).

That MCL 771.3 was subject to varying interpretations does not undermine *Gahan*'s interpretation of MCL 780.766(2), as the majority states. As previously noted, the Legislature is presumed to act with knowledge of judicial interpretations by this Court and the Court of Appeals, see *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 439-440; 716 NW2d 247 (2006), yet, in defining the scope of restitution under the Crime Victim's Rights Act, the Legislature did not simply incorporate the language of MCL 771.3 into the act. Instead, it selected language mirroring *Gallagher*'s broad interpretation of MCL 771.3, rather than incorporating language similar to decisions that limited restitution under MCL 771.3 to only those losses related to the transaction that formed the factual basis for the conviction. Simply stated, the fact that *Gallagher*'s interpretation of MCL 771.3 was not universally followed is irrelevant in light of the

10

conduct" to broadly define the scope of restitution orders imposed as a condition of probation, *Gahan* was correct that "there was no indication from the Legislature that the common-law meaning was not being incorporated" into the subsequently enacted Crime Victim's Rights Act. *Gahan*, 456 Mich at 272. Indeed, given the Legislature's knowledge of existing precedent at the time of the Crime Victim's Rights Act's enactment in 1985, see *Nation, supra*, I cannot conclude that the Legislature's selection of the phrase "course of conduct" within MCL 780.766(2) "plainly shows" a legislative intent to incorporate something other than the phrase's common-law meaning, see *Covelesky, supra*. Had the Legislature wished to give MCL 780.766(2) the narrow meaning the majority opinion gives it today, the Legislature could have instead defined the scope of a restitution order under MCL 780.766(2) in a manner that was consistent with the federal statutes discussed in *Gallagher*, 55 Mich App at 619, and *Becker*, 349 Mich at 485-486. Indeed, the Legislature is deemed to be aware of this Court's plurality decision in *Becker*, yet the Legislature did not limit restitution consistent with that opinion to only those "loss[es] caused by the very offense for which [the] defendant was tried and convicted", *Becker*, 349 Mich at 486—a proposition continuously advocated for by defendants decades before the Crime Victim's Rights Act's enactment. Instead, the Legislature chose the broader phrase—"course of conduct that gives rise to a conviction"—which was consistent with Court of Appeals caselaw rejecting *Becker*.

---

Legislature's awareness of conflicting interpretations of MCL 771.3 and its subsequent choice to incorporate language mirroring *Gallagher*'s "course of conduct" language into the Crime Victim's Rights Act.

11

I also disagree with the majority that, in determining the Legislature's intent, seven Justices of this Court "ignored" and "devoted no attention to" one phrase within MCL 780.766(2), i.e., that the defendant make restitution to any victim of the defendant's course of conduct "*that gives rise to the conviction*." The majority asserts that, because the phrase "gives rise to" means "to produce or cause," the statutory language requires a causal link between conduct for which the defendant is criminally charged and the defendant's conviction. Stated another way, the majority reasons that "[o]nly crimes for which a defendant is charged 'cause' . . . the conviction" and, thus, "conduct for which a defendant is *not* criminally charged and convicted is necessarily *not* part of a course of conduct that gives rise to the conviction." Although I agree with the majority that the statute requires some type of a causal link between a defendant's "course of conduct" and his conviction, I disagree with the majority that the requisite connection necessarily excludes uncharged conduct from the scope of a defendant's "course of conduct." As *Gahan* explained, the historical use of the phrase "course of conduct" included uncharged conduct that was related to a defendant's illegal scheme *from which the defendant's conviction arose.* Thus, the statutorily required causal connection is that a defendant's conviction arises from an illegal scheme. See *Gahan*, 456 Mich at 272-273. If that connection exists, a court may order restitution for the commission of related, but uncharged crimes, within that same illegal scheme.

Similarly, *Gahan* does not permit a restitution award for any victim of a defendant's course of conduct without qualification, as the majority claims. Instead, by requiring that a defendant's conviction must have *arisen* from a specific "course of conduct," the Legislature limited the "course of conduct" from which restitution may be

12

ordered. Thus, a defendant cannot be ordered to pay restitution for "totally dissimilar crimes committed at different times," or those involving an unrelated illegal scheme. *Gahan*, 456 Mich at 273 n 11. Rather, the defendant is only required to compensate for "all the losses attributable to the illegal scheme that [actually] culminated in [the] conviction" that triggered restitution. *Id*. at 272. As *Gahan* explained, in order for uncharged conduct to be included within the restitution order, the uncharged conduct must have occurred as part of the same or similar illegal scheme from which the defendant's conviction arose. *Gahan*, 456 Mich at 272-273. Accordingly, *Gahan* properly concluded that the statutory language requires a defendant to provide restitution not only to the victims that are the subject of the very act that results in the defendant's conviction, but also to those harmed by the defendant's related course of criminal conduct from which the defendant's conviction arose. In doing so, *Gahan* properly gave effect to each word within the statute, while giving the phrase "course of conduct" its unique common-law meaning. In contrast, by holding that only conduct for which a defendant is "charged *and convicted* is . . . part of the 'course of conduct *that gives rise to the conviction*' " (emphasis added), the majority reads the phrase "course of conduct" out of the statute, effectively rewriting the statute to limit restitution to only those losses suffered by "victims of the defendant's conduct that results in a conviction."[7]

---

[7] I also disagree with the majority's suggestion that *Gahan*'s interpretation of MCL 780.766(2) conflicts with MCL 780.767. MCL 780.767(1) provides that, "[i]n determining the amount of restitution to order under [MCL 780.766], the court shall consider the amount of the loss sustained by any victim as a result of the offense." The majority concludes that, by referring to "the offense," MCL 780.767 can "only refer to the offense of which the defendant was convicted, because it is that 'offense' that makes him subject to being ordered to pay restitution in the first place." However,

Notably, our grant order in this case assumed that *Gahan*'s statutory interpretation was correct. Yet, despite the interpretation unanimously afforded to the statute's plain language by this Court in *Gahan*, the majority brushes *Gahan* aside on the basis of its conclusion that *Gahan* is so poorly reasoned that it must be overruled without full briefing and oral argument on the issue.[8] In doing so, the majority ignores that the

MCL 780.767 can be read harmoniously with *Gahan*'s interpretation of MCL 780.766(2). Notably, it is MCL 780.766(2) that defines the proper scope of the restitution order, explaining that the order shall include losses for *any* victim of a defendant's "course of conduct that gives rise to the conviction." Accepting that the phrase "course of conduct" within MCL 780.766(2) includes uncharged conduct that does not form the factual basis for a defendant's conviction, MCL 780.767 merely directs the sentencing court to consider, in determining the amount of restitution to order under MCL 780.766(2), the loss sustained by any victim as a result of an uncharged offense that is a part of the defendant's illegal scheme from which the defendant's conviction arose. To that end, although the issue was not raised by the parties and therefore I do not opine on it, nowhere in the 21 pages of transcript of the restitution hearing did defense counsel contradict the prosecution's evidence regarding the defendant's commission of the uncharged crimes or the amount of restitution assessed for each.

[8] The majority guides us astray in suggesting that the parties addressed the validity of *Gahan*'s statutory analysis in their briefs to this Court. In light of this Court's grant order, which *limited* the issues to be briefed, it is no surprise that the parties did not actually argue whether this Court should overrule *Gahan* on nonconstitutional statutory interpretation grounds in their briefs, but instead focused solely on the issues raised in this Court's grant order—whether restitution is a criminal penalty and whether, in light of post-*Gahan* precedent, Michigan's statutory restitution scheme is unconstitutional insofar as it permits a trial court to order restitution based on uncharged conduct. Further, although one litigant made a single, conclusory comment at oral argument regarding *Gahan*'s interpretation of the statutory language, in my view, that does not substitute for full briefing on the actual substance of *Gahan*'s statutory analysis from both of the parties in this case.

Finally, the majority is correct that I do not reach the constitutional issue on which this Court granted leave to appeal, but it is not because, as the majority suggests, a "constitutional hurdle prove[d] unresolvable to [this] dissent." Instead, it is precisely because *Gahan* was correctly decided that I believe that this Court should address the issues upon which it granted leave to appeal, rather than overruling a longstanding and

14

Legislature has subsequently amended MCL 780.766, but it has not otherwise sought to correct what the majority claims is *Gahan*'s "plainly incomplete" interpretation in the 17 years since *Gahan* was decided.

Further, in classifying *Gahan* as an "untenable" opinion that "ignored" the statutory language, the majority fails to appreciate that *Gahan* was decided after a careful review of a divided Court of Appeals opinion, after full briefing and oral argument, and after post-argument discussions. Thus, in overruling *Gahan* by finding dispositive an issue neither raised nor briefed by the parties in this case, the majority not only fails to appreciate the thoughtful consideration given to the statutory language by the *Gahan* Court, but it also fails to consider whether the advocates in this case could have added anything insightful to the newfound debate over the correctness of unanimous precedent.[9] Quite simply, I disagree with the majority that *Gahan* was wrongly decided.

## III. CONCLUSION

Today, the majority holds that seven Justices of this Court ignored a portion of the statute at issue. I disagree with the majority's characterization of *Gahan*'s analysis. But I also disagree with the majority's decision to disregard one of the foundational principles

---

correct determination of the Legislature's intent in enacting the Crime Victim's Rights Act. Nevertheless, because my position has not garnered majority support, I decline to opine on those issues.

[9] It requires no citation to authority to note that the vast majority of convictions in this state result from guilty pleas, many of which are the result of plea negotiations when a prosecutor offers to dismiss some charges if a defendant agrees to plead guilty to others. In light of crime victims' constitutional right to restitution, see Const 1963, art 1, § 24, only time will tell the impact of the majority opinion on prosecutorial charging decisions, plea negotiations, and trials.

of our adversarial system of justice by failing to give each party an opportunity to be heard in order to assist this Court in understanding the issue before it and prevent a preliminary understanding of the issue from improperly influencing the Court's final decision of an issue that was previously and unanimously decided. Accordingly, I must respectfully dissent.

Michael F. Cavanagh